(159 App. Div. 505.)

### SPITZER v. HEALY et al.

(Supreme Court, Appellate Division, First Department. December 19, 1913.)

MASTER AND SERVANT (§ 330*)—DEATH OF SERVANT—EVIDENCE—SUFFICIENCY.
  In an action for the wrongful death of a servant of a contractor, while placing fireproof partitions around the elevator shaft of defendant's building, evidence *held* insufficient to show that the servant, who met his death in the elevator shaft, was free from contributory negligence, and that defendant's operator was guilty of negligence.

  [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1270–1272; Dec. Dig. § 330.*]

  Laughlin and Hotchkiss, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Flora Spitzer, as administratrix of Joseph Spitzer, deceased, against A. Augustus Healy and another. From a judgment for plaintiff, and an order denying their motion for new trial, defendants appeal. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and HOTCHKISS, JJ.

James J. Mahoney, of New York City (Adolph F. Bruenner, of Brooklyn, of counsel), for appellants.

Morris Cukor, of New York City, for respondent.

SCOTT, J. The plaintiff as administratrix of Joseph Spitzer, deceased, has recovered a judgment for damages for the death of her intestate, caused, as it is alleged, by the negligence of appellants' servant in operating an elevator. The appellants, owners of a loft building in the city of New York, had employed certain contractors named Smith to remove the old sheet iron partitions inclosing the elevator shafts in the building and to put up fireproof partitions in place thereof. Plaintiff's intestate was an employé of the contractors, and immediately be-

fore the accident had been working on the seventh floor of the build-
ing.

There were three elevators in a row, the center one being used as
a passenger elevator, and the outside ones as freight elevators. It was
in the shaft of one of the latter elevators that plaintiff's intestate was
killed. At this time the old doors had been taken off, and deceased
and another workman had been engaged in putting in place iron cas-
ings or lintels to receive the new doors, which were to be installed by
another contractor. There was an iron beam at the floor level, running
across the elevator shaft at right angles to the line of the opening into
the shaft. The elevator car was balanced by heavy iron counter-
weights which descended as the car ascended, and vice versa, and
which ran quite close to the iron beam above described. The con-
tractors had arranged with the engineer and elevator operator that the
car itself should be used as a platform or scaffold for the men when
obliged to work within the shaft, and a platform was constructed on
top of the car for this purpose. Shortly before the accident happened
deceased and another man had been standing on this platform prose-
cuting the work. A call came for the elevator to go to a lower floor,
and by direction of the operator deceased and his coworker had left
the car and landed on the seventh floor; the operator saying that he
would return shortly. For some reason he was detained for about half
an hour. When he started the car up, the counterweights, of course,
descended, and as they did so caught deceased, who was standing
wholly or partly on the cross-beam, and crushed him to death.

The negligence attributed to the operator is that he failed to give
warning, by calling out, before he started his car up. He swears that
he did call out, but there was evidence from which the jury might have
found that he was in error in this respect. On the whole evidence
it is difficult to say just how deceased came to be where he was when
he was struck. There was evidence tending to show that, at times, men
engaged on similar work in the building were in the habit of standing
with one foot on the floor and the other foot on the cross-beam or
girder, standing, as some of the witnesses expressed it "catecornered,"
and one witness said that some 10 or 15 minutes before the accident
he had seen the deceased in this position. No one else saw him there,
although there were others in a position to see, and it did not appear
that any work on which he was then engaged required him to so stand.
Furthermore, the position in which his body lay after it had been
crushed by the counterweights indicated that he must have been stand-
ing with both feet on the cross-beam.

It is difficult to accept this version of the accident. But, even if it
were accepted, it would not follow that the plaintiff is entitled to re-
cover. The situation was that deceased had been working on top of
the elevator car, that he had been told, and had every reason to be-
lieve, that the car would soon return, and might return at any moment.
Under these circumstances, it seems to be clear that he voluntarily
placed himself in a position of danger, without taking any precaution
by prearrangement with the operator, or by calling out, to avoid the

risk of an accident. Nor was the operator called upon, under all the circumstances, to anticipate that deceased would be in a position involving danger, not from the ascending car, but from the descending counterweights. The case, as it seems to us, while it does not actually resemble as to the facts Lynch v. Elektron Mfg. Co., 195 N. Y. 171, 88 N. E. 48, and Anderson v. Thompson-Starrett Co., 153 App. Div. 740, 138 N. Y. Supp. 762, still falls within the principle laid down in those cases.

Upon a careful reading of the whole case we cannot avoid the conviction that the evidence failed to establish either the negligence of appellants, or the freedom from negligence on the part of plaintiff's intestate, and that the verdict was influenced more by sympathy than by a calm consideration of the evidence. For this reason, we are unwilling to sustain the recovery.

Judgment and order appealed from reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN, J., concur. LAUGHLIN and HOTCHKISS, JJ., dissent.